Good morning. May it please the court, my name is Sean Chowns and I represent the appellant in this case, Marion Carter, who was once a cheer and dance sponsor for J.T. Robinson High School in Little Rock in the Pulaski County Special School District. The standard of review here is de novo, and because there are genuine issues of material fact, then this court should go ahead and reverse and remand the district court's decision. Now, let me go over what the appellant believes are genuine issues of material fact, particularly the three reasons that we consider to be pretextual that led to her termination. One issue was an incident at a restaurant called Chicken Express, and at this, first I want to make clear that this happened in one year before she was actually terminated. In fact, the principal, Ms. Bailey, went ahead and recommended her for renewal, and that goes to show a pretext that she didn't consider a serious enough incident to affect her job. With that said, the testimony and the record shows that Ms. Carter did the best job she could, and that there are no witnesses, there are no statements from the principal in the record showing that there were any complaints by management or students or any video or anything else. Counsel, I want to back up. I know you're talking about pretext, but I want to back up to the prima facie case, and in particular, as to the inference of discrimination. I think, and you can correct me if I'm wrong, you're proving that through the similarly situated employee, was it Popolis? Is that right? Amber Popolis, that's correct. Okay. So here's the problem I'm having with that, and I'm hoping you can help me. Even assuming that both your client and Ms. Popolis both had improper cheers or sexually suggestive cheers and had the team do that, there's a couple other things. One of which you just mentioned, the Chicken Express incident, and then also the declining participation enrollment in the cheerleading and dance programs that I think arguably do not make her similarly situated in all relevant respects. Could you address that for me? Sure. There's some case law that's quoted, and I think it's in the reply brief. But it's a quote that says, according to this circuit, you don't have to be an exact clone, that it has to be a comparable seriousness. And I think it supports that proposition that not every incident has to be the same. I think that in itself is comparable. And when you compare it to what we believe that is being a pretext, I think that's enough to meet that element of us being similarly situated. Do you think, though, that – I mean, I get that if, you know, let's say there's five things they rely on and perhaps the comparator has four things that are sort of the same. But here we've got a sort of 33%. We've got one thing's the same and two things that aren't. Do you think the fact that most of it's not the same still makes her a comparator? Well, I'm not aware of any case law that says that there's any mathematical equation there. Sure. So that's difficult for me to say. Yeah, yeah. I know that there's one that we're saying that's comparable. Isn't part of the equation here that the alleged misconduct on the part of Popolis was actually more serious than the alleged misconduct? Yes, it is. And because it's more serious, especially when compared with this incident at the restaurant and with the supposed declining enrollment, that I think that in itself makes them more similarly situated and more comparably serious. Okay, thank you. That was helpful. And, again, I also want to point out the second incident or reason for the termination was declining enrollment. Or not enrollment, but the declining amount of trials or the students trying out for cheer or dance. Now, the important thing here is that she was given no notice that there was a specific goal, a quota to meet when it concerns the number of students trying out for the team. But it is undisputed as to it's labeled both Exhibit 1 and Exhibit 4. I just work here. But the one that's labeled Exhibit 1 and Exhibit 4, there's no doubt about the decline, right? Well, here's the thing. And one of our exhibits points out in the brief is that the defendant in discovery answered our interrogatories. One of the interrogatories asked, from 2012 to 2013, what is the number of students who were trying out or who were on the team? And their statement was that both before the lawsuit and afterwards, there is no record of how many people or students were trying out for the team. So that goes to the credibility of the school district. Well, except I thought that your client at deposition acknowledged this. Didn't your client at deposition acknowledge this decline and acknowledge this very sheet of paper, Exhibit 1, Exhibit 4? I bet you know what I'm referring to. Well, I don't recall that. Okay. No, no, no. And I may be wrong. And along those lines, I think the main thing here is there was no notice of it. And then the third reason here is the chair itself. And what is alleged here with the vulgar chair is more comparably serious than what is alleged against my client. And it's important to note that once someone or a complaint was pointed out to her, she stopped it immediately. Even though the coach said she could go and do it in chair competition, she decided just to stop it immediately. So there is a comparison there. And that shows, I believe, pretext because Ms. Populous was kept on. She was terminated for a totally unrelated reason. Now, were the chairs similar or more serious? And what's the evidence showing which was more sexually suggestive than the other? Well, I think the evidence is the statement of Ms. Carter when she said that she witnessed the chair by Ms. Populous' team. She went ahead and pointed it out to Ms. Bailey, who basically shrugged off and didn't do anything against it. But she was proactive, Ms. Carter, in making sure that this chair wasn't done again. She took steps herself, even though that wasn't within her purview. But Ms. Bailey was aware of that at the time, and she did nothing about it. Now, as far as the chair done by my client's cheerleaders, I looked through the record, and it's not clear exactly what the chair is. Somehow the record missed that. And I can't physically – I don't want to physically show you what the chair is. But basically it was something to the effect of a chair directed at the other side. But I don't want to go into the other side. But anyway, it was something that had been done previously, and it was just this one incident one time, and it was a complaint. And so it was a regular standard cheer, and there's nothing in the record to indicate that her cheer was not standard for other cheerleading teams at other schools. So are you – at one point – and I want to clarify this. You were almost – the way I heard – almost conceding that Ms. Carter's cheer could have been inappropriate, but so is Ms. Populous'. I just want to be clear. Are you conceding there was inappropriateness? Oh, no. I'm not conceding that. I just wanted to clarify that. Thank you. And one other thing I want to point out. I think in essence this case is about the administration wanting – complaining that the cheerleading squad was basically too black. And that there's a reference in the record where she met the athletic director and Ms. Bailey, and the athletic director said this – the cheer and dance team needs to be more multicultural. And Ms. Bailey was there, and she didn't object. And the testimony – her deposition testimony says she basically supported that position. I reserve – How does that show – Go ahead. Oh, no. Go ahead. How does that show that the action taken against Ms. Carter herself was discriminatory? I understand that you could say that maybe there was some – an inappropriate view by the administrator. But I'm trying to figure out how that goes to the personnel action itself. Well, it goes to racial motivation, intent to discriminate. That they were looking at what this school presented to the public. And to them, there's indication in the record that it's basically too black because the teacher – when she – But it said multicultural, right? Right. Yeah, which is not – well, but go ahead. Well, I think the record shows that that's what they were talking about. Okay. Thank you. Thank you very much. Mr. Keys. Good morning, Your Honors. May it please the court. My name is Cody Keys, representing the Pulaski County School District. The main issue I want to focus in on is for Ms. Carter, who has admitted there's no direct evidence of discrimination. So we run to the McDonnell-Douglas shifting framework. She has to prove that there's – not prove, but she has to present circumstances that there's an inference of discrimination. And in doing so, she has brought forth Ms. Populus four years prior to her. But here's the problem. The only evidence in the record as to what Ms. Populus did or didn't do is the testimony of Ms. Carter. And the district court properly pointed out that the self-serving and uncooperated testimony of the – Counsel, we have cases that say the opposite. We have cases – the U.S. Supreme Court has a case that says that the testimony of the plaintiff may be enough – may be enough to defeat summary judgment. Well, it has to be – Are you aware of that? Yes, Your Honor. Okay. It has to be – it has to be probative evidence in order to survive summary judgment. And in this case, what I'm pointing out is Ms. Carter makes an allegation that four years ago there was a dance teacher who allowed a similar dance. No one else could corroborate that. And all Ms. Carter had to do, potentially, to survive summary judgment is present one affidavit from one student saying, oh, I remember that dance. Counsel, isn't that what Rule 56C provides? It does, but they didn't do that in this case, Your Honor. That's the point I'm making is that's all that they had to do to get past the hurdle, potentially, is to present some probative evidence that this really happened. And that wasn't done. But under your argument, wouldn't every plaintiff lose if they don't have a second witness? No, Your Honor. I wouldn't say that. I would say they have to present, per case law, probative evidence. What do you mean by probative? You've used it three times. Well, something more than a scintilla, something that could show the court that this may have happened. And there's nothing here. There's no student. Did Ms. Carter say she saw what the dance, the populist group, I'm going to call them, did? Right. She said she saw it. She did, Your Honor. I can see that the plaintiff indeed said that. So it's not hearsay, kind of, right? Do you think it's hearsay or not? I should ask the question. She's a party opponent, Your Honor, so I would say that it would be admissible what she saw. So that's the first contention that they're not comparators. But second of all, that they're not comparators, as the panel pointed out, they have to be relevant. They don't have to be clones, but they have to be relevant in the similar circumstances. They weren't similarly situated in all relevant circumstances because, in addition to the foul dancing, we also presented evidence of an incident at the chicken, not the chicken shack, the chicken express. We also presented evidence, and it is in the record, and it's cited by the district court, that there was a decline in numbers. So the district, Your Honor. Well, help me. Did the plaintiff here, at her deposition, acknowledge this one that's in our file? It's marked Exhibit 1, Exhibit 4. It's in the district court's record. Do you know what I'm referring to? Yes, Your Honor. I think it's the only hard evidence in the case. Well, in this case, there was a hearing at the administrative level, and we presented that. Ms. Bailey testified that there was a reduction in the 2015-16 school year as well as the 16-17 school year. She said that the numbers dropped. And then in her deposition, she went even farther to say, in addition to the numbers dropping for tryouts, by the time we got to mid-season, there were three girls in the stands. But let me ask you, did Ms. Carter acknowledge that at her deposition? She did. She acknowledged that, and I also recall her trying to justify why there was less to the district. But she acknowledged there was a drop. Indeed, Your Honor. I thought that's what the record said. But go ahead. So there's two additional, quote, bad behaviors that we've alleged on the part of Ms. Carter. That's why she cannot be a comparator to Ms. Populus four years prior to her. What if those additional two, and this is, I've struggled with this in past cases. What if those two additional things that distinguish the comparator are, in fact, pretextual? This is what opposing counsel was getting at, so that essentially a defendant can make up two other reasons just to distinguish the plaintiff from other people in the past. What do we do with that? Okay, with the burden shifting, I put forth the nondiscriminatory reasons. Then he alleges they're pretextual. If the court indeed finds they're pretext, then I think he's met the prima facie case. But here we put forth significant evidence that these three were not pretextual by any means. You know, the Chicken Express incident, that's a chicken restaurant for the panel. What did plaintiff say about that at her deposition? She admitted that indeed an issue occurred and the girls had to leave. She said that it got, she didn't use the word violent, but she said that it was an event. She used mild language, but the district court cited it, saying that indeed the plaintiff acknowledged something happened. There was an investigation. The girls were not able to go to the remainder of the tournament. So that's what the plaintiff admitted. But we also have evidence that there were patrons at the restaurant that then called the principal. The principal got complaints. She reached out to the manager who confirmed, yeah, we had a bad incident. The manager of the Chicken Express. At the Chicken Express. And also the dances that were performed. The issue, again, that I don't think there would be compared towards, there's no complaints about populace other than Ms. Carter. The complaints about Ms. Carter's dance routines were from the athletic director. He complained about it. He testified it was inappropriate. The athletic director testified that he received multiple complaints. So we have evidence that that actually took place. And it's not just a bad dance. The athletic director was deposed. We don't really call it a deposition in an administrative hearing, but he was at the administrative hearing. Is that in the record of this case? Is it in the record of the federal case? Because you've got a state court case. We've got a state court case running contemporary. I know, but is it in the record of this federal case what the athletic director said? It's hearsay because it came from the principal who testified as to what Mr. Escola said at the hearing. The hearing's been lodged in a state case. By the way, the state case is on a perennial continuance, right? At least I can tell from your Arkansas. Arkansas has a Teacher Fair Dismissal Act which allows the teacher to claim or to at least review. And nothing going on on settlements in your motion for continuance in state court? You say there are settlements, and you say, of course, the Eighth Circuit case. But nothing's going on in that case, right? It's just all stalled. Short answer? Short answer, yes, Your Honor. And that case deals with some of the notice requirements that he's discussing with notice of the bad acts. So, you know, our case is simple that we don't think that he can even establish a prima facie case because he has to put forth circumstances that lead to an inference of discrimination. The district court properly found that Miss Populous was not a comparator for the purposes of making the first burden, so to speak. Or evidence of pretext under Doucette. Right. They also, the court went ahead and said, well, there's no circumstances of discrimination. We'll give you the benefit of the doubt. Then let's look at your non-discriminatory legitimate reasons. Then they weighed pretext. You know, there's the cases that say pretext and non-legitimate discriminatory reasons mesh together at that point. And the court fleshed them all out and said those weren't pretextual. Said there's proof that each of those happened and that would give rise to an employee reasonably terminating or non-renewing the contract. And here, you know, I believe the court knows this. We didn't non-renew her teaching contract. She's still the math teacher. The record's clear. She's the chair of the department. But you agree there's an adverse action, no supplemental contract. You're not the chair team coach. Yes. $2,700 stipend. We acknowledge that's adverse employment action. Right. It's in the record that they no longer have dance. But for the purposes of this matter, we acknowledge that those two stipends were non-renewed. So she meets every piece of the four. She's in a protected class. There was adverse employment. But we don't believe that there's an inference of discrimination. And that's the piece that we don't think she gets to based on populace not being a comparator. So you concede the second. She met the employer's legitimate expectations? The district court said so. Go ahead. And this court has struggled with that as well. There was a case. It was the Riley case. But ultimately, to meet that prong, you just have to show that you were employed there. So we're saying that she did meet the legitimate expectations for a prima facie case. But then when we get into the reasonable and non-discriminatory reasons, that's where we put forth the bad conduct. And your honors, if there's no further questions from the panel, I think I better stop why. No, no. I want to ask a question. Sorry, I'm doing it again. No, that's okay. It's your turn. So on the issue, you said that the legitimate, the other bad acts came up at the second stage. So are you suggesting we shouldn't consider them on the inference of discrimination or we should consider them and figuring out whether they're similarly situated? You should not. I believe the inference of discrimination, she has to put forth circumstances showing she had a comparator. Right. And I don't think she meets that. Okay. Because of these other bad acts. Well, because I don't think Populous was a comparator given the lack of evidence in the case. Okay. I mean, she has to put forth evidence, circumstances. She has to put forth something. All she has is her self-serving testimony. But to the extent the court finds that's enough, then we get into the bad acts. Okay. I got it. Thank you. I thought you may have asked me if I was going to, Mr. Childs, who I know well, said he wasn't going to do the dance for you. And I'm thankful that the panel did not ask me either. Good. We thought about it. No further questions, Your Honor. Thank you. Thank you. Thank you very much, Mr. Childs. All right. Do you, Your Honor, have any further questions? Well, one question I do have is on the one thing that makes them valid comparators, which is the inappropriate cheers. Is there anything to the fact that on one we have just one complaint, Ms. Carter, and on the other we have multiple complaints that are in the record? In other words, there's evidence that there were parental complaints. There was a complaint from the athletic director, et cetera. That seems to me to be a difference between the two. Because an administrator could say, look, Ms. Carter is complaining, but I haven't heard any other complaints. Whereas people may not come to the game anymore if we don't fix this because of the multiple complaints as to Ms. Carter. Well, here's the thing with that. Ms. Carter did let Ms. Bailey know about what happened. And basically she did shrug it off. And I don't know if you can really, if that distinction is enough to make them not, because that's more of a matter of chance than anything else. Or it could be a reflection. It could be a reflection that one cheer was really, really bad and offended everybody. And the other cheer was maybe somewhat bad and didn't offend everybody who was in the audience or many people in the audience. I just throw that out. Yeah, yeah. I don't know. I think it's more of a matter of, when you're talking about parents, it's more of a matter of chance than anything else. Anybody else? I think that does exhaust the questions. Thank you. Okay. Thank you both for your arguments. Case number 19.